HARRISON COUNTY COURT *vs.* SMITH'S ADM'R.

such orders as will secure the party claiming freedom an opportunity of having his right fairly determined.

---

Harrison County Court *vs.* Smith's Administrator.

PET. EQ.

### APPEAL FROM HARRISON COUNTY COURT.

Case 22.

1. The Constitution, Article IV, section 3, authorized the Legislature to pass laws requiring that a majority of the justices of the peace of each county should set at the Court of Claims to assist in laying the county levy. The act of 1851 requires the attendance of the justices in making appropriations exceeding $100 at one time. And although the 19th article of the Revised Statutes gives power to the County Court in general terms to erect, superintend, and repair all needful county buildings; and although the 4th section of the 21st article of the same title declares that justices of the peace shall only compose a part of the County Court in laying the county levy and appropriating money, and transacting other financial business, yet the 1st section of article 3, title "County Levy,"

declares expressly that the County Court, (except the county of Jefferson) shall not, unless composed of the majority of the justices of the county, have power to appropriate or charge upon the county more than $50 for one object, or more than $100 at one term. Hence a county judge sitting as the County Court had no power to lay a charge upon the county for the erection of a new jail, costing more than he was authorized to impose for any one object or at any one term.

2. Neither the County Court as an aggregate body or *quasi* corporation, representing and acting for the county in its financial affairs, and authorized through the power of taxation to coerce debts due from the county, was not bound by an order of the county judge sitting as county judge to raise money to pay for public buildings, which he had authorized to be erected; nor to levy money to pay for buildings so erected, although under their observation or part of them.

Case stated.

The county judge of Harrison county made an order for building a jailer's house, on the public ground in Cynthiana, and appointed a commissioner to contract for it, but the order was not entered of record. Smith, the appellee, undertook the work by contract with the commissioner, and completed it, and the justices of the County Court refused to levy the cost of the building upon the county. Smith brought his petition in the Circuit Court to compel payment, and judgment was rendered *in his favor* for the sum of $1,932 86, from which the County Court has appealed to this Court. It is averred that the building of the house was known to the county judge and the justices of the peace whilst the same was in progress, and not forbidden by any of them. A majority of the justices deny that they knew that the house was being built, and all deny that there was any order made, or intended to be made, whilst they were on the bench, or that any authority was given to Bruce, as commissioner, or to any one else, to contract for the building of the jailer's house. One or two of them saw the house while it was in progress, but did not know by what authority it was done. One supposed it was done by the authority of the county judge, as in a conversation with him he claimed authority to have it built. The county judge says the

order to build the jailer's house was made by him as county judge, drawn out on paper, but the clerk had failed to record it.

Upon hearing, the court adjudged that the plaintiff was entitled to recover a fair compensation for building the jailer's house, and appointed commissioners to report what was such fair compensation; who reported, and the court adjudged, that the Harrison County Court should pay to the plaintiff the sum of $1,932 86, with interest at six per cent., from the 15th of April, 1853; and the County Court appealed to this court.

*R. A. Buckner*, for appellant—

The recovery is resisted on the following grounds:

1. There is no order of the County Court of record for the building of the jailer's house for which the suit is brought.

2. It is not pretended that a majority of the justices of the peace were present when the clerk was directed to make an order.

3. Parol evidence is not competent to show that an order was directed by the county judge to be entered upon the record. The County Court is by law a court of record, and none are its records except such as are put upon the order books, and signed by the presiding judge. (*Talbot vs. David*, 2 *Marshall*, 606; *Hendley vs. Russell, Hard.* 145.)

4. The County Court is composed of the county judge and justices of the county, and to it is delegated jurisdiction—1. To lay and superintend the collection and disbursement of the county levy. 2. To erect, superintend, and repair all needful public county buildings and structures.

Though the greater part of the jurisdiction of the County Court may be exercised by the county judge, there are others which require the concurrence of a majority of the justices of the peace. At the court of claims which should be held in October in each year, the justices of the peace of the county shall

HARRISON
COUNTY COURT
vs.
SMITH'S ADM'R.

sit with the presiding judge, and constitute the court. (*See Code, page* 234.)

But the justices of the peace shall compose a part of the court, only at the laying of the levy, in appropriating money, and in transacting other financial business of the county. Again: It is provided, (*sec. 1, art. 3, Rev. Stat. title "County Levy," page* 212:) "The County Court, (except for the county of Jefferson,) unless composed of a majority of the justices of the peace of said county, in commission, shall not have the power to make appropriations of the county revenue, or to make any charge thereon greater than fifty dollars for any one object; nor shall any such appropriations or charges exceed at any one term the sum of one hundred dollars in the aggregate."

Is the ordering and causing a building to be erected to be paid for by the county, a charge upon the county revenue? To incur a charge means to incur a debt. It is a debt. It cannot be supposed that the intention of the Legislature was that the county judge should have the power to incur a debt to the amount of thousands, and no power to make a levy to pay the debt.

The argument, that because the law makes it the duty of the County Court to provide a sufficient jail, and that the jailer shall reside within a specified distance of the jail, implies that the County Court shall furnish a house for the jailer within that distance, is unsound. As well might it be said that other officers who are required to reside in their districts should be provided with residences.

But it is said that the justices fraudulently permitted the jailer's house to be erected, by their silence, whilst it was in progress. Only a part of the justices are shown to have been cognizant of its being built, and they profess not to have known by what authority it was done; one perhaps knew it was by the order of the county judge, who claimed the power,— which he did not scrutinize. It is however insisted for the appellant that this allegation is applied to the County Court, and it can only contract as such. (*See*

*Com'rs vs. Jones*, 1 *Breese Rep.* 106.) In Indiana where the county commissioners have regular meetings fixed by law, it is said in 3 *Blackford*, 501, *Archer vs. Com'rs of Allen county*, that in an action against commissioners for work done, the declaration must show an act creating their liability, done by them at a regular meeting of the board, at the time fixed by law.

The county judge and all the justices in any other capacity than as a County Court, at the time and place fixed by law, had no power to make any contract to charge the county. How then could they, by their silence in vacation, bind the county?

The unauthorized acts of members of a corporation are not evidence against the corporation. (*Angel and Ames on Corporations*, 232.)

*J. O. Hodges*, on the same side—

The justices of the Harrison County Court may be properly styled a quasi aggregate lay civil corporation, possessing such powers as have been conferred by the Legislature, and of none other except such as are indispensably necessary to carry into effect the powers expressly granted. " A corporation being merely a political institution, it has no other capacities or powers except those which are necessary to carry into effect the purposes for which it was established. A corporation is incapable of a personal act in its corporate capacity. It cannot be considered as a moral agent, and therefore cannot commit a crime, or be the subject of punishment, or take an oath, or appear in person, or be arrested or outlawed." (2 *Kent's Com.* 279.)

In regard to contracts by corporations, the same author says : " At last, after a full review of all the authorities, the necessity of the old ·technical rule, (as to the necessity of a corporate seal,) was condemned as impolitic, and essentially discarded, for it was decided by the Supreme Court of the United States, in the case of the *Bank of Columbia vs. Pat-*

*terson*, that whenever a corporation aggregate was acting within the range of the legitimate purpose of its institution, all contracts by its authorized agents were express and binding promises of the corporation, and all duties imposed upon them by law, and all benefits conferred at their request, raised implied promises, for the enforcement of which an action lay." (2 *Kent's Com.* 289.)

But it is equally well settled that corporations are only bound by the acts of their agents, done within the scope of their authority. (2 *Kent's Com.* 291.)

Corporations are the mere creatures of the law, and derive all their power from the acts creating them. Such is the language of modern English decisions. And they cannot bind themselves for purposes foreign to that of their creation, and their acts are to receive a strict construction. (2 *Kent's Com.* 299.)

In view of the foregoing principles, and the facts contained in this record, it is believed that there is no liability on the appellant.

The suit is against the justices of the Harrison County Court in their corporate capacity, not as individuals. A majority of the justices of the county had authority alone to make such contract as would be binding. The appellee does not show any contract with any authorized person whose acts could bind the citizens of Harrison county. Nothing is claimed of the justices as individuals. If such had been done, the proof is not sufficient to charge them.

It was not the duty, by law, of the justices to build a jailer's house. They are required by law to keep a court house and jail, but not a jailer's house. Their power to do so may be well questioned. According to the doctrine of Kent, they have no such power.

The county judge had no power to make a contract, or authorise a contract to be made, to bind the county for building a jailer's house, or any other beyond the amount of $100.

The position that the county judge can make con- tracts for work, &c., to be done for county purposes, though he cannot levy the money to pay for the work, is denied, and it is believed a reference to the statutes will show the fallacy of such a position, and that the judgment should be reversed.

*J. Curry,* for appellee—

We contend that if the county judge was authorized to order the building of the jailer's house, the County Court was bound to levy the fund to pay for the work. The judgment is, however, right, as the justices were apprised of the order of the county judge, and of the progress of the work—some actually, and others constructively.

The maxim that "all are presumed to know the law," is to be confined to cases of crimes and misdemeanors; but the Chancellor will relieve against palpable mistakes.

There is no controversy in regard to the building of the house, and under a contract with Bruce. Williams, one of the defendants, admits this, and that he believes Smith done the work under a belief that the county judge had full power to order it. The fraud is denied.

The testimony warrants the conclusion that the justices knew of the building of the jailer's house on the public ground; and it cannot be presumed that the justices were so negligent of the public interest as not to have inquired why and how it was that the building was being erected. Smith was permitted to proceed and finish the house without objection to its being done, or its suitableness. If the justices allowed the building of the house, not intending to pay for it, it was a fraud upon him.

Smith ought not to lose by the failure of the county judge and clerk to place the acts of the court on record. The law will not sanction a fraud in a corporation more than in an individual, and the

HARRISON
COUNTY COURT
*vs.*
SMITH'S ADM'R.

same presumptions arise against them as against individuals. (*Angel & Ames on Corporations*, 158.)

Corporations will be presumed to accept acts done for their benefit, in the same manner as natural persons. (*Ib.* 136.) Notice to an agent is notice to a corporation. (*Ib.* 174.) Therefore, if the justices had notice, or saw that the work was progressing, thus in in effect affirmed the contract, and accepted the materials and work done for their benefit, and should not refuse payment.

No reason is perceived why Smith should not have a lien for his materials and work. Upon this subject the Circuit Court is silent. Smith asks but a fair compensation for labor and materials. It is unjust to refuse that to him.

*G. Davis*, on the same side—

The appellee in this case relies upon the following positions:

1. The County Court of Harrison county is a public municipal corporation, and within the scope of its general powers may bind itself, like other corporations or individuals, either by express or implied contracts. (*Angel & Ames on Corporations*, 174.)

The County Court of Harrison county, generally, and for almost all the purposes and powers of a County Court, consists of its county judge ; and the justices of the peace for the county only compose part of the court when it is engaged in laying the county levy, and in appropriating money, and in transacting other fiscal business of the county. (*Rev. Stat.* 234.) And all the powers of the County Court which do not come strictly under those heads, may be exercised by the county judge alone, sitting as a County Court.

" The jailor in each county shall, by virtue of his office, be superintendent of the public square, court house, clerk's office, jail, stray-pen, and other public buildings at the seat of justice." (*Rev. Stat.* 537.) Each jailer shall not reside more than two hundred

yards from the jail, and where it is such that it admits the residence of a family therein, he shall reside in the jail. A violation of this section shall be deemed a malfeasance in office. (*Ib.* 619.)

The County Court, acting by the county judge alone, had the power to order, and did, in fact, order the erection of the jail house built by the appellee, and, by its appointed agent, contracted with appellee to build it.

As the law requires every jailer to live within two hundred yards of the jail house, and in many cases the jailer could not fulfill this requisition of the law except by being furnished with a residence on the jail lot, it is impliedly the duty of the County Court to cause a jailer's house to be erected, located as the law directs.

The jailer, as the agent of the county, having charge of the public buildings located at the county seat, has the power to cause to be rebuilt a jail house, for which the County Court will be bound to make payment from the county treasury. (5 *B. Monroe*, 129.)

The work being such a work as the law required, and resulting wholly to the benefit of the county, the County Court is bound to pay for it. (*Angel & Ames on Corporations*, 176.)

The house being such as the County Court was bound to build, it is bound to pay for it. (*Ib.* 178.)

Failing and refusing to pay for it, the County Court is such a corporation as might be compelled by legal proceeding; and the proper proceeding was adopted. (3 *Dana*, 10.)

The decree is right, and the Circuit Court should proceed by mandamus to compel the Harrison County Court to levy the amount necessary to pay for the building.

The county judge sitting alone may establish roads; damages consequent on their establishment to be assessed, for which the levy court would be bound to make payment, though it had no agency in creating the charges.

The *County Court*, when that term is used in the constitution or laws, refers to and embraces the county judge alone. The county judge as County Court, has all power and jurisdiction over the subject of jailer's houses. The justices of the county are made component parts of the County Court only in two cases, and the matter is regulated by the constitution in this clause :

" Section 37. The General Assembly may provide by law, that the justices of the peace in each county shall sit at the court of claims, and assist in laying the county levy, and making appropriations *only.*" On no other occasions, and for no other purposes, are the justices to form a part of the County Court. By reference to the journal of the convention, it will be seen that many propositions were made in that body to require the justices to compose, in part, the County Court for various other purposes; and all were sternly voted down, and they were permitted to be component of that court for no other purpose than to sit in the court of claims and assist in laying the levy.

December 30.　Chief Justice MARSHALL delivered the opinion of the Court—

*This is an appeal from a judgment against the* Harrison County Court for between $1,900 and $2,000, the estimated value of a house built by Smith as a jailer's house, upon a lot in Cynthiana, the seat of justice of the county; which lot belonged to said County Court, and once had upon it the house formerly used as a jailer's house, adjoining or near to the county jail; the old house having been pulled down for the erection of the new one on or near its site.

It seems that the erection of the house had never been authorized by a County Court composed of the county judge and a majority of the justices of the county, but at most was authorized by the orders of the county judge holding the County Court; and the work proceeded with the knowledge of some (one or more) of the justices as to the manner in which it

had been authorized, and with a knowledge of some others, acquired during its progress, that the house was in fact being erected on the public ground on which the jailer's house had formerly stood. There seems to be no doubt that the county judge believed that he was authorized to have the building erected without the co-operation of a majority of the justices; and it is certain that Smith, the builder, believed that the contract under which he was erecting the house was properly authorized so as to bind the court and be a charge upon the county. And it is quite probable that the justices of the court who saw the building going on without suggesting a doubt or a question as to the authority or the liability, may, as they suggest, have severally supposed that it had been sufficiently authorized by others than themselves. We may add that the organization of the County Court having been shortly before radically changed, and the great mass of its powers having been invested in the county judge alone, as the County Court, there may have been a mistake, not only on the part of the county judge, but also on that of the justices of the county with regard to their respective powers, and much more on the part of the mechanic who built the house.

But for many years before the adoption of the Revised Statutes, the Legislature had, in repeated enactments, required that the County Court, not only when laying the county levy, but when making any appropriation, or laying any charge upon the county exceeding $100, at one term, should be composed at least of a majority of all the justices of the county. The constitution of 1850, (*art. 4, section* 37,) authorizes the Legislature to provide that the justices of the peace in each county shall sit at the court of claims, and assist in laying the county levy and making appropriations only. The act of March, 1851, to organize County Courts, requires the attendance of the justices of the county, in making appropriations exceeding $100 at one term. And although the 19th article of

*Margin note:*

HARRISON COUNTY COURT *vs.* SMITH'S ADM'R.

1. The Constitution, Article IV, section 3, authorized the Legislature to pass laws requiring that a majority of the justices of the peace of each county should set at the Court of Claims to assist in laying the county levy. The act of 1851 requires the attendance of the justices in making appropriations exceeding $100 at one term. And although the 19th

HARRISON
COUNTY COURT
vs.
SMITH'S ADM'R.

article of the
Revised Stat-
utes gives power
to the County
Court in general
terms to erect,
superintend,
and repair all
needful county
buildings; and
although the 4th
section of the
21st article of
the same title
declares that
justices of the
peace shall only
compose a part
of the County
Court in laying
the county levy
and appropria-
ting money, and
transacting oth-
er financial bus-
iness, yet the
1st section of
article 3, title
"County Levy,"
declares ex-
pressly that the
County Court,
(except the
county of Jeffer-
son) shall not,
unless composed
of the majority
of the justices
of the county,
have power to
appropriate or
charge upon the
county more
than $50 for
one object, or
more than $100
at one term.
Hence a county
judge sitting as
the County
Court had no
power to lay a
charge upon the
county for the
erection of a
new jail, costing
more than he
was authorized
to impose for
any one object

the Revised Statutes, title "Courts," gives power to the County Court, in general terms, to erect, superintend, and repair all needful county buildings and structures, which clause, if it stood alone, might give some ground for the claim of power made in behalf of the county judge. Yet, as the 4th section of the 21st article of the same title declares that justices of the peace shall only compose a part of the court in laying the county levy and appropriating money, and transacting other financial business; and, more especially, as the 1st section of article 3d, title "County Levy," declares expressly that the County Court (except for the county of Jefferson,) shall not, unless composed of a majority of the justices of the county, have power to appropriate or charge upon the county more than $50 for one object, nor more than $100 at one term, we consider it unquestionable that under these enactments, which we regard as being to the extent at least of the restriction just mentioned, clearly constitutional, the county judge, sitting as the County Court, had no power to lay a charge upon the county for the erection of a new jail at a cost which must have been expected to exceed, and has actually exceeded by many hundred dollars, the sum which he was authorised to charge upon the county for any one object, or even at any one term. And this excess, if actually authorized by him, is the more flagrant from the fact that there does not appear to have been any limit placed by him upon the cost to be incurred in the erection of the building referred to.

Under the statutes which have been referred to, we are satisfied that neither the county of Harrison nor its County Court, as an aggregate body or a *quasi* corporation, representing and acting for the county in its fiscal affairs, and authorized through the power of taxation to provide for and coerce the debts due from the county, was bound by any order which the county judge, or less than a majority of the justices, setting as a County Court, may have made for

the erection of this building; and much less is the county, or the County Court, or its fiscal agent and representative, and in its corporate capacity, bound by the vague and uncertain acquiescence of some members of the body who may have seen the work going on without objection or question. But although under these views we must conclude upon the case presented by this record that the judgment against the County Court, *eo nomine*, to be enforced doubtless against the county, is erroneous, we are yet of opinion, as before, that the building having been erected on the public ground of the county, for a public purpose, coming within the legitimate objects and power of the County Court, and by the authority if not by the formal order of the county judge, and the labor and expense of the erection having been incurred by an individual in good faith for the public benefit, under the belief that he was acting under proper authority, and that the County Court and the county were bound for his reimbursement, he was in justice and good conscience entitled to a just equivalent, at least to the extent of the ameliorations of the public property produced by his labor and expense. If it had appeared that the County Court (a majority of the justices being present) had assumed, (or if it should actually assume,) the possession and control of this new erection, by authorizing its jailer to reside in it or otherwise, the claim, in conscience and justice, of which we have spoken, might assume the character of an enforcible equity. And at all events the builder may remove the building.

But as the case stands, the judgment is reversed, and the cause remanded with directions tò dismiss the petition without prejudice.

HARRISON COUNTY COURT vs. SMITH'S ADM'R.

or at any one term.

2. Neither the County Court as an aggregate body or *quasi* corporation, representing and acting for the county in its financial affairs, and authorized through the power of taxation to coerce debts due from the county, was not bound by an order of the county judge sitting as county judge to raise money to pay for public buildings, which he had authorized to be erected; nor to levy money to pay for buildings so erected, altho' under their observation or part of them.